## CULBERTSON v. THE H. WITBECK COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 217. Argued April 11, 1888. — Decided April 30, 1888.

The statutes of Michigan require the attestation of two witnesses to the grantor's signature. A deed of husband and wife was offered in evidence, the attestation to which was: "Signed, sealed, and delivered in presence of S. W. for" the husband; "W. H. R., G. H. for" the wife; and there was a certificate that "the word 'half' in the twelfth line was

interlined before signing S. W., E. W." E. W. signing this certificate with S. W. was the justice of the peace who took the acknowledgment, and his certificate of acknowledgment stated that he knew the person who made the acknowledgment to be the person who executed the instrument. *Held,* that the execution of the deed was proved, and it was properly admitted in evidence.

A certificate by a master in chancery and notary public in New Jersey, taking an acknowledgment there of a deed of land in Michigan that he is " satisfied that the parties making the acknowledgment are the grantors in the within deed of conveyance." is a sufficient certificate that they were the same persons as those named as grantors in the deed; but if defective in this respect, the defect is cured under the laws of Michigan by a certificate from the proper official that the person taking the acknowledgment was " a master in chancery and notary public," and that " the annexed instrument is executed and the proof of acknowledgment thereto taken in accordance with the laws of the State of New Jersey."

The will of a citizen of New York, dying in the city of New York, was admitted to probate there. A duly authenticated copy being presented for probate in Michigan, notice to all parties interested by publication was ordered, and on proof of such publication, and after hearing and proof, the instrument was admitted to probate in Michigan, and ancillary letters were issued. *Held,* that the parties were properly brought before the court by publication, and that the will was properly admitted to probate.

An objection as to the sufficiency of a certificate of a register of deeds to an instrument offered in evidence which was not made at the trial cannot be taken here.

In Michigan a declaration of trust which declares that the parties executing it hold the property in trust for themselves and two other persons is an express trust, and under the laws of that State the whole estate in law and in equity is vested in the trustees.

When a party to an action of ejectment in Michigan sets up a tax title, several years old, it is competent for the other party, after showing by the official records that an illegal expenditure of public money was ordered, sufficient under the laws of the State to vitiate the whole tax if paid from it, to prove by parol evidence that the sum so ordered to be paid was paid out of the moneys raised by the tax in question.

EJECTMENT. Verdict and judgment for the plaintiff. Defendant sued out this writ of error. The case is stated in the opinion.

*Mr. D. H. Ball* and *Mr. Walter H. Smith* for plaintiff in error. *Mr. A. T. Britton* and *Mr. A. B. Browne* were with them on the brief.

*Mr. Edward Cahill* for defendant in error. *Mr. B. J. Brown* was with him on the brief.

Mr. Justice Miller delivered the opinion of the court.

This is an action of ejectment, originally brought in the Circuit Court for the County of Marquette, in the State of Michigan, by The H. Witbeck Company, plaintiff, against William C. Culbertson, defendant.

The object of the suit was to recover certain lands situated in the county of Marquette, to which the plaintiff claimed title in fee. The case was removed to the Circuit Court of the United States, where a trial was had which resulted in a verdict in favor of the plaintiff. This, as a matter of right, was set aside, upon motion, under the law of Michigan, and a new trial granted, which also resulted in a verdict and judgment in favor of the plaintiff. It is this which the present writ of error brings up for review.

During the progress of the trial the plaintiff established title by various conveyances, beginning with patents from the United States, in William A. Pratt. As a link in the chain of title from Pratt, the plaintiff offered in evidence the record of a deed from Pratt and wife to Still Manning and William Wright, which was executed and acknowledged in the State of Michigan. This was objected to by the defendant upon the ground that it was attested by only one witness as to the signature of William A. Pratt. The instrument was, however, admitted in evidence notwithstanding the objection, to which the defendant excepted. This ruling is made the ground of the first assignment of error.

The deed offered in evidence was signed, acknowledged and recorded according to the laws of the State of Michigan. It is admitted that there was one witness to the signature of Mr. Pratt and two witnesses to the signature of Mrs. Pratt, but it is denied that there was a second witness to the signature of the former. The part of the record containing the testimonium is as follows:

"In witness whereof the said party of the first part have hereunto set their hands and seals the day and year first above written.

> "WM. A. PRATT.          [L. S.]
> "HARRIET W. PRATT.    [L. S.]

Signed, sealed and delivered in presence of —

> "STEPHEN WALSH,
>         "For William A. Pratt
> "W. H. ROCKWELL,
> "GEO. HOWE,
>         "For Harriet W. Pratt.

"The word 'half' in the twelfth line was interlined before signing [on the second page].

> "STEPHEN WALSH.
> "EBENEZER WARNER."

Ebenezer Warner was the justice of the peace who took the acknowledgment of Pratt on the 29th day of October, 1855, which is also the date of the deed, and in his certificate of such acknowledgment he says: "I certify that I know the person who made the said acknowledgment to be the individual described in and who executed the within instrument." It will also be noted that he signs with Walsh as a witness, and that their signatures immediately follow the statement as to the word "half" having been interlined before signing.

These circumstances are sufficient to show that Walsh and Warner were witnesses to the signature of Mr. Pratt, and the matter may be easily explained by supposing that Rockwell and Howe, the two witnesses for Harriet W. Pratt, inserted their names above those of Walsh and Warner as witnesses for William A. Pratt. Under all the circumstances we think the court was correct in admitting the deed in evidence. *Carpenter* v. *Dexter*, 8 Wall. 513.

The second assignment of error also rests upon an alleged insufficiency in the acknowledgment of another deed, which was offered in evidence by the plaintiff, from Still Manning and wife and William Wright and wife to Edward C. Wilder,

conveying all the lands in controversy. To the admission of this deed defendant's counsel objected "for the reason that it does not appear on said certificate that the persons acknowledging were the same persons as those named as grantors in said deed." The acknowledgment in this case was taken in the State of New Jersey, before William A. Richter, a master in chancery and notary public, who says in his certificate that the parties, naming them, personally appeared before him, "who, I am satisfied, are the grantors in the within deed of conveyance." This language is the defect complained of by defendant.

We are inclined to the opinion that this is sufficient evidence that the parties who appeared before him were the grantors in the deed. If he was satisfied of that fact the court cannot now inquire into the evidence by which he reached that conclusion. But any difficulty on this subject is removed by the certificate of the clerk of the county of Essex in that State, that said Richter was a master in chancery and a notary public in and for said county, and "that the annexed instrument [meaning the deed] is executed and the proof of acknowledgment thereto taken in accordance with the laws of said State of New Jersey." This official statement that the acknowledgment was made according to the laws of the State is, we think, sufficient to make it valid, because the law of Michigan provides, (Howell's Statutes, § 5660,) where such acknowledgments are taken out of the State, that the clerk certifying to the official character of the officer shall also state "that the deed is executed and acknowledged according to the laws of such State."

The third assignment of error is based upon the fact that the court allowed the plaintiff to put in evidence a record from the office of the register of deeds of Marquette County of the will of Edward C. Wilder. The objection of defendant's counsel to the admission of this certified copy of the will, as stated in the bill of exceptions, is "that said record contained no proof that the probate court of the county of Marquette obtained jurisdiction to make the order admitting said will to probate in this State, and that it contains no

record of any authentication or probate by any foreign court or officer." This objection being overruled an exception was taken by counsel for the defendant to the admission of the record.

The copy contained, after the seal of Wilder, the testator, the usual attestation of two witnesses, who declare that the will was signed in the presence of each of them, and that it was at the same time declared by him to be his last will and testament, and that at his request and in his presence they signed their names as witnesses thereto. The testator died in New York, and the paper offered for probate in the county of Marquette, in Michigan, purported to be a copy of the will as it had been probated in the former State. The following papers constitute the proceedings in the probate court for the county of Marquette:

"STATE OF MICHIGAN, *County of Marquette, ss:*

"At a session of the probate court for the county of Marquette, holden at the probate office in the city of Marquette, on Monday, the thirty-first day of October, in the year one thousand eight hundred and eighty-one.

"Present: Edward S. Hardy, judge of probate.

"In the Matter of the Estate of Edward C. Wilder, Deceased.

"This day having been appointed by the court for hearing the petition of James E. Dalliba praying, amongst other things, for reasons therein set forth, that a certain instrument, purporting to be a copy of the last will and testament of said deceased, and the probate thereof duly authenticated and heretofore presented to this court with said petition be allowed, filed and recorded. Now come into court the said petitioner and answers, and it satisfactorily appearing by due proof on file, that a copy of the order of this court touching the hearing of said petition made on the seventh day of October last past, had been duly published as therein directed, whereby all parties interested in the premises were duly notified of said hearing.

"And it further satisfactorily appearing to the court, after

a full hearing upon said petition and on examination of the proofs and allegations of the petitioner, that said deceased was, at the time of his death, a resident of the city of New York, in the State of New York, and died leaving his last will and testament, which was duly approved and allowed in the surrogate court for, in and of the county of New York, in the State of New York, according to the laws thereof, and that he was possessed of estate situate in said county of Marquette, on which said will operates.

"And the evidence touching the premises being materially considered, it satisfactorily appears that said copy of said will ought to be allowed in this State as the last will and testament of said deceased.

"It is therefore ordered, adjudged, and declared by this court that said copy of said last will and testament of said deceased be allowed, filed, and recorded in this court, and that the same shall have full force and effect in this State, as such will, agreeably to the statute in such case made and provided.

"And it is further ordered that the execution of said last will and testament be committed, and the administration of the estate of the said deceased be granted to said Sophia Wilder, the executrix in said will named, who is ordered to give bond in the penal sum of one thousand dollars, with sufficient sureties, as required by the statute in such case made and provided, and that the same being duly approved and filed, the letters testamentary do issue in the premises.

"EDWARD S. HARDY,<br>"<i>Judge of Probate.</i>

"STATE OF MICHIGAN, <i>County of Marquette, ss :</i>

"Probate Court for said County.

"Be it remembered that the annexed and foregoing instrument, being a duly authenticated copy of the last will and testament of Edward C. Wilder, late of the county of New York, in the State of New York, deceased, which was duly allowed, filed, and recorded in said court in pursuance of the decree thereof, of which the foregoing is a true, full, and correct copy.

" In testimony whereof I have hereunto set my hand and affixed the seal of said court at the city of Marquette, in said county, this thirty-first day of October, in the year one thousand eight hundred and eighty-one.

" [SEAL.]                              " EDWARD S. HARDY,
                                       " *Judge of Probate.*"

We can see no defect of jurisdiction in the probate court of Marquette County sufficient to justify the rejection of this copy of the will, or to impeach the action of the probate judge in ordering it to be recorded. There is in the proceedings the full recital of the production of the copy of the will, and that the order for the hearing of the petition, made on the 7th day of October, " had been duly published as therein directed, whereby all parties interested in the premises were duly notified of said hearing." The court further certifies that the probate thereof was duly authenticated " and presented to this court," meaning, evidently, the probate of the will in the State of New York. The certificate further recites that " it satisfactorily appears to the court, after a full hearing upon said petition, and on examination of the proofs and allegations of the petitioner, that said deceased was, at the time of his death, a resident of the city of New York, in the State of New York, and died leaving his last will and testament, which was duly approved and allowed in the surrogate court for, in and of the county of New York, in the State of New York, according to the laws thereof."

This being a recital in the record of the judgment of the court admitting the instrument to probate, certifying that it had been fully proved by the " examination of the proofs and allegations of the petitioner," and that it was duly admitted to record, is sufficient. Unless the necessary parties in such cases could be brought before the court by publication there would be in many cases an impossibility of doing it at all. *Grignon* v. *Astor*, 2 How. 319.

There appears to be some controversy in the brief submitted by counsel as to the fact that the copy of the instrument offered in evidence is certified from the office of the register

of deeds; but as no such objection was made upon the trial of the case it is unnecessary to discuss it here.

The fourth assignment of error is founded upon the rejection of a deed, called a declaration of trust, made by Still Manning and William Wright, which was offered by the defendant. This instrument was signed and acknowledged in the month of November, 1855, and covered the land now in controversy. The deed from Manning and Wright to Wilder, referred to in the second assignment of error, was executed in July, 1860, nearly five years after this declaration of trust. The object of the defendant in offering the latter was to show that the legal title had passed out of Manning and Wright and that Wilder did not get the title by the deed which was made to him. Upon the objection of the plaintiff to the introduction of this deed it was rejected by the court, to which ruling the defendant excepted.

The proposition upon which the defendant sought to introduce this instrument is founded upon certain statutes of the State of Michigan, of a character similar to those common in other States, found in Howell's Statutes, §§ 5563 to 5573 inclusive. They comprise the usual provisions for abolishing uses and trusts, and enact in substance that the use shall vest in the *cestui que trust* as a legal title, except when otherwise provided. Most of these statutes, however, have relation to implied trusts, and it is not necessary here to go through all of them, nor to enter upon their critical discussion at this time. It is sufficient to say that the paper presented in this case is not a conveyance to anybody, but it purports to declare in express terms that the parties executing it hold the property in trust for themselves and two other persons. It is, therefore, an express trust, and comes within the language of § 5578, which reads as follows:

" 5578. Every express trust, valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustees in law and in equity, subject only to the execution of the trust; and the person for whose benefit the trust was created shall take no estate or interest in the lands, but may enforce the performance of the trust in equity."

This declaration of trust evidently contemplated that the legal title remained with the trustees, and that they had the power and authority to sell and convey the property, the profits or proceeds to be divided according to the interest which was declared in the instrument creating the trust. We think the legal title remained in Manning and Wright, until by the deed to Wilder they transferred to him the strict legal title. The deed was therefore properly rejected.

The next and last assignment of error which we propose to consider relates to the production of various deeds conveying the lands in question to persons under whom the defendant claims on account of sales for taxes. These deeds were offered in evidence and rejected by the court, to which ruling the defendant excepted.

The principal ground upon which they were held to be invalid was, that the tax levy under which they were sold included an illegal allowance for extra compensation to Goodwin and Eddie, who were judges of the state court which included within its jurisdiction the county of Marquette. It appeared that the supervisors of that county allowed and paid to them, out of the tax levies, an additional compensation of $400 per annum in excess of their salary. It does not seem to be controverted that, by the law of Michigan, if this sum was included in the assessment and levy of taxes, on account of which the sales were made that these deeds represent, the title based upon them is void. Both parties admit this proposition in argument, and certain authorities referred to in the briefs establish it as the settled doctrine of that State. *Lacey* v. *Davis*, 4 Mich. 140; *Case* v. *Dean*, 16 Mich. 12; *Edwards* v. *Taliafero*, 34 Mich. 13.

In *Hammantree* v. *Lott*, 40 Mich. 190, the court said: " A tax deed is void if a portion of the tax for which it was given was excessive and invalid." In the recent case of *Silsbee* v. *Stockle*, 44 Mich. 561, the whole subject was very elaborately reviewed by Judge Cooley, of that court, and the principle here stated fully established. The strength of the opinion in that direction may be seen by the following extract from the syllabus of the case:

" The statutory provisions that no sale for delinquent taxes shall be held invalid unless it be made to appear that all legal taxes were paid or tendered, and that all taxes shall be presumed to be legally assessed until the contrary is affirmatively shown (Comp. L., § 1129), are unconstitutional so far as they sustain sales for taxes which are in part illegal."

Counsel for plaintiff in error deny the sufficiency of the evidence produced in regard to the increase of salary by the county, above what the State allowed to the judge, or that the fact is established by competent testimony ; and it is urged with much force that this attempt to show now, some fifteen or twenty years after the transaction, that the tax levy for the particular years in question did include this increased compensation, cannot be accomplished by parol testimony. We think, however, that there is enough in the bill of exceptions which is not parol, but matter found in the records of the boards of supervisors who made the tax levy, to establish the fact without any parol testimony. The records of the proceedings of this body for Marquette County were read in evidence for each of the years 1861, 1865, 1866, and 1867, the same being all that appeared therein relative to the equalization of the assessment rolls of the several townships and the action by which the rate of apportionment of the State and county taxes for each of those years was fixed. This is spread in full upon the record in the bill of exceptions. It appears that the aggregate valuation of the taxable real and personal property of the county in 1861 was determined to be $1,285,965.50, and we then find this entry .

".The subject of additional compensation to Judge Goodwin being under consideration, on motion of —— ——, it was resolved that all former action of the board on this subject be rescinded and that the sum of four hundred dollars be paid to Judge Goodwin in orders on the treasurer of this county, upon his signing a receipt in full of all demands against the county on such account, up to the first day of January, A.D. 1862, such receipt to be filed with the clerk before such orders are issued."

Then immediately follows the rate of taxation :

" On motion it was resolved that a tax of six and one-half mills on the dollar be raised on the taxable property of Marquette and Schoolcraft Counties for the contingent fund, to defray the general expenses of the county."

The only parol evidence introduced which seems to have had any influence upon the decision of this question was the testimony of a witness that Judge Goodwin received this $400 from the county treasury at a time when it must have been paid out of the levy made at this time. We think that was competent, and that the date of the receipt of the money being shown the inference that it was paid out of the tax levy, which we have already recited, is sufficient.

It is also shown by the records of the board of supervisors, in regard to the levies of other years, that for the years 1865, 1866, 1867 and 1868, an illegal sum of the same character, being $350 per annum, was included in the assessment and paid over to Judge Eddie. The court left it to the jury to determine, under all the evidence which was introduced, whether, in pursuance of such resolutions, these sums were levied as a tax and for the purpose, as claimed by the plaintiff, of paying salaries to these judges. Although he refers in this connection to the additional evidence of two witnesses, Healy and Maynard, as having some influence upon the determination of this question, it is quite obvious that the proposition was established of the payment of additional compensation to these judges out of an unlawful levy of taxes, so far as the lands in question are concerned. And while the parol testimony was not necessary to show that the amount paid for that purpose was included in the tax levy for the years under which these sales were made, it was competent to show by oral testimony that these judges actually received the money out of the taxes collected under those assessments.

These are the only assignments of error which we are called to consider, and as we do not find that there was error in the matters alleged, the judgment of the Circuit Court is

*Affirmed.*